Filed 5/28/26  P. v. Jones CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TREMONT NAVON JONES,<br><br>    Defendant and Appellant. | B341069<br><br>(Los Angeles County<br>Super. Ct. No. XSCTA158511) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FREDDIE LEE TRONE,<br><br>    Defendant and Appellant. | B342267 |

APPEALS from judgments of the Superior Court of Los Angeles County, Connie R. Quinones, Judge. The judgment as to Jones is affirmed as modified. The judgment as to Trone is affirmed.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant Tremont Navon Jones.

Winston Kevin McKesson for Defendant and Appellant Freddie Lee Trone.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill, Kathy S. Pomerantz, and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

A jury convicted defendant Tremont Navon Jones of second degree robbery and conspiracy to commit robbery, and convicted defendant Freddie Lee Trone of first degree felony murder, second degree robbery, and conspiracy to commit robbery. Defendants now appeal their convictions. The People concede, and we agree, there are clerical errors in Jones's abstract of judgment that must be corrected. In all other respects, we affirm.

## FACTUAL BACKGROUND

On September 12, 2022, around 12:27 p.m.,[1] Rakim Allen, a rap artist who performed under the name PnB Rock, and his fiancée Stephanie S.[2] entered Roscoe's Chicken and Waffles restaurant (Roscoe's) in South Los Angeles wearing jewelry worth

_____

[1] The investigating officers composed a timeline using footage from multiple cameras. The record indicates certain footage was four minutes fast while other footage ran four minutes slow. We refer to the timeline presented by the People for consistency. Defendants do not dispute any discrepancy in the timeline.

[2] We refer to the victim by her first name and last initial to protect her privacy interests. (Cal. Rules of Court, rule 8.90(b)(4).)

approximately $500,000. Jones, a former Roscoe's employee who frequently visited the location, was already inside eating a meal. After seeing Allen, Jones fist bumped him and left Roscoe's a few minutes later.

Surveillance footage showed after Jones left, he waited under a stairwell in the strip mall where Roscoe's was located. At 1:06 p.m., a man later identified as Trone entered Roscoe's parking lot driving a Buick Enclave (Buick), got out of the car, and met with Jones under the stairwell. After Defendants finished their conversation, Jones walked to a car, ducked out of view of the surveillance camera, reemerged, and walked back toward Trone. While Defendants stood near each other with their backs to the camera, Jones had an object and a towel in his right hand. Trone then walked away with an object in his left hand while Jones no longer carried the object. Trone returned to the Buick and drove away.

A few minutes later, the Buick stopped alongside a sidewalk near Roscoe's to let an individual later identified as Trone's 17-year-old son, J.T.,[3] out of the car. At 1:16 p.m., J.T. walked past Jones and headed toward Roscoe's. Immediately thereafter, Jones made a one-second phone call to Trone and drove away in his own car.

When J.T. entered Roscoe's, he headed to Allen's table while wearing a ski mask and holding a gun. J.T. ordered Allen and Stephanie to give him all their jewelry and threatened to kill them if they did not comply. Immediately thereafter, J.T. shot Allen several times, took Allen's jewelry and ran out. At

---

[3] Because J.T. was a minor when the incident occurred, we refer to him by his initials. (Cal. Rules of Court, rule 8.90(b)(10).)

1:17 p.m., the Buick returned to Roscoe's parking lot. A minute later, J.T. got into the car, and the Buick drove away. Surveillance footage near Trone's apartment showed Trone and J.T. arriving at the apartment in the Buick around 1:32 p.m.

Meanwhile, law enforcement arrived at Roscoe's and attempted to render aid to Allen, but he succumbed to his wounds.

On September 13, 2022, around 2:45 a.m., police responded to a car fire in Gardena. The car was the Buick, and Trone was the arsonist. Later that morning at 10:47, Trone texted J.T.: "Just hold tight. Everything coming together." Two minutes later, Trone texted J.T.: "Just stay calm and cool. No crazy talk. All good vibes. I love you. Imma call you in a couple of hours." At 10:20 p.m., Trone texted J.T.: "[I]mma hit you when it's green."

## PROCEDURAL HISTORY

The People filed charges against Jones and Trone. The first amended information alleged two counts of second degree robbery (Pen. Code,[4] § 211; counts 2 & 3) and conspiracy to commit robbery (§ 182, subd. (a)(1); count 6) against Jones. The information alleged first degree murder (§ 187, subd. (a); count 1), two counts of second degree robbery (§ 211; counts 2 & 3), and conspiracy to commit robbery (§ 182, subd. (a)(1); count 4) against Trone. As to the murder charge, the information also alleged a principal was armed with a handgun during the commission of the murder (§ 12022, subd. (a)(1)). The information also alleged both Defendants had suffered a prior "strike" conviction (§§ 667, subds. (b)–(j), 1170.12).

---

[4] Undesignated statutory references are to the Penal Code.

Defendants were tried together before a single jury. During trial, Defendants waived their right to a jury trial on the prior strike allegations. The jury ultimately found Defendants guilty as charged and found the firearm allegation true against Trone. Trone filed a motion for new trial based on insufficiency of the evidence, which the trial court denied.

The trial court held a sentencing hearing on September 23, 2024. The court found Jones's prior strike allegation true and sentenced him to 12 years. The court struck Trone's prior strike allegation in the interests of justice and sentenced him to 31 years four months to life.

Defendants filed timely appeals, which we consolidated.

## DISCUSSION

### I. Jones's Appeal (case No. B341069)

Jones makes three arguments on appeal. He argues the trial court did not take a valid waiver of his right to a jury trial on the prior strike allegation, the court's reliance on his prior conviction to impose an upper term sentence was unconstitutional, and there are clerical errors in his abstract of judgment. We reject the first two contentions but agree his abstract of judgment must be corrected.

#### A. The Trial Court Took a Valid Waiver of Jones's Right to a Jury Trial on the Prior Strike Allegation

##### 1. Waiver of Jury Trial

Under the "Three Strikes" law, a prior conviction for a "strike" offense subjects a defendant to increased punishment. (§§ 667, subd. (b), 1170.12, subd. (a).) Section 1025, subdivision (b) provides a defendant with the right to have the

5

jury decide the truth of a prior strike allegation unless the defendant waives the right.

A waiver of jury trial must be " 'knowing and intelligent, that is, " ' "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it," ' " as well as voluntary " ' "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." ' " ' " (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*).) But trial judges need not follow a rigid formula or use any particular words to ensure a jury waiver is knowing and intelligent. (*Id.* at pp. 169–170.)

"The voluntariness of a waiver is a question of law which [appellate courts] review de novo." (*People v. Vargas* (1993) 13 Cal.App.4th 1653, 1660.) A jury waiver is valid only if the record shows it is voluntary and intelligent under the totality of the circumstances. (*Sivongxxay*, *supra*, 3 Cal.5th at p. 167.)

## 2.    Analysis

As a preliminary matter, we note the People argue Jones forfeited his claim that the trial court did not take a valid waiver of his right to a jury trial on the prior strike allegation by failing to raise it below. We disagree. The right to a jury trial is a substantial right, and no objection is required to raise this type of error on appeal. (§ 1259; see *People v. French* (2008) 43 Cal.4th 36, 48 ["Defendant did not forfeit his Sixth Amendment right by failing to request a jury trial on the aggravating circumstances"].)

Turning to the record before us, we conclude it shows Jones's waiver of his right to a jury trial on the prior strike allegation was knowing and intelligent.

Near the end of trial, the following exchange occurred between the trial court, Jones's counsel, and Jones:

6

"THE COURT: [¶] . . . [¶] . . . Mr. Jones has a prior conviction for a 211. He has the right to have a jury trial, same jury that decides this case, if they find him guilty to decide whether or not the prior is a valid prior. [¶] Does he want to have a jury trial, court trial, or stipulate to the prior, Mr. Haas [Jones's counsel]?

"MR. HAAS: Court trial.

"THE COURT: Okay. Mr. Jones, you have a right to have the same jury that decides this matter, if they find you guilty, to determine whether or not your prior is valid. [¶] Do you understand your right to have a jury trial for that prior?

"DEFENDANT JONES: Yes.

"THE COURT: Do you waive and give up that right and accept a court trial, which is me, looking at prior information they have on it to decide whether or not it's a valid prior?

"DEFENDANT JONES: Yes.

"THE COURT: You understand your right to a jury but you're waiving that?

"DEFENDANT JONES: Yes.

"THE COURT: Counsel, do you join?

"MR. HAAS: I do."

As the record here shows, the trial court repeatedly informed Jones he had a right to have the jury determine whether his prior conviction was a valid strike. Jones was fully aware of his right to have a jury decide the truth of the prior strike allegation and was aware waiving the right meant the court would decide the issue. Jones was also duly represented by

counsel, who joined in the waiver. We see no indication Jones's waiver was not "knowing" or "intelligent."

Jones contends the waiver was invalid because the trial court did not inform him all 12 jurors must agree to find the prior strike allegation true. Although the court did not mention jury unanimity, our Supreme Court has "never insisted that a jury waiver colloquy invariably must discuss . . . the unanimity requirement." (*Sivongxxay, supra,* 3 Cal.5th at p. 168.) Indeed, a valid waiver turns, not on whether the parties " ' " adhere[] to a predetermined ritualistic form of making the record," ' " but on whether all relevant circumstances show the waiver "was knowing, intelligent, and voluntary." (*Id.* at p. 170.)

Courts may consider whether the defendant was represented by counsel. "[T]he trial court in a criminal case is not required to explain to a defendant the nature and consequences of his action in waiving a jury trial where he is, as in the case at bar, represented by counsel and fails to show that either he or his counsel has been misled as to the result which might occur from his waiving a jury trial . . . ." (*People v. Lookadoo* (1967) 66 Cal.2d 307, 311; see also *People v. Langdon* (1959) 52 Cal.2d 425, 432 [same].)

We find the California Supreme Court's opinion in *People v. Tijerina* (1969) 1 Cal.3d 41 directly on point. The circumstances surrounding the waiver there are very similar to the one here:

"[DISTRICT ATTORNEY]: [Defendant] Tijerina, you understand that in this case now before the Court, No. A 220328, you're entitled to a jury trial to determine your guilt or innocence in this matter, and you're also entitled to a jury trial to determine whether the prior

8

felony convictions that have been alleged are true or false; do you understand that?

"[DEFENDANT]: Yes.

"[DISTRICT ATTORNEY]: Do you know what a jury trial is?

"[DEFENDANT]: Yes, ma'am.

"[DISTRICT ATTORNEY]: That is when twelve people sit over here in the box and hear all the evidence. [¶] You can give up your right to the jury trial and have the judge sitting alone determine all the issues in this case. What is your desire? Do you want a court trial or a jury trial?

"[DEFENDANT]: Court trial.

"[DISTRICT ATTORNEY]: All right. You waive your right to jury trial at this time on all the issues?

"[DEFENDANT]: Yes.

"[PUBLIC DEFENDER]: Join in the waiver. "[DISTRICT ATTORNEY]: People join in the waiver." (*Id.* at p. 45, fn. 2.) There, as here, the defendant argued the waiver was invalid because the trial court did not mention the unanimity requirement. Rejecting that argument, the Supreme Court explained the trial court was not required to further explain the significance of the defendant's waiver because he was represented by counsel. (*Id.* at pp. 45–46.)

Because our de novo review is based on "all relevant circumstances," we also consider events "before and after [Jones's] waiver was entered" to confirm its "character and scope." (*Sivongxxay, supra*, 3 Cal.5th at pp. 167, fn. 2, 173, fn. 8.) The waiver occurred near the end of trial. By then, Jones was well aware of the unanimity requirement; the trial court had

9

mentioned the rule in jury selection. And after the waiver, the court instructed the jury on the requirement before the jury deliberated. Jones, who was present during these proceedings and represented by counsel, never indicated he wanted a jury trial on the prior strike allegation.

Jones's prior experience with the criminal justice system further supports the conclusion he knowingly and intelligently waived jury trial on the prior strike allegation. (*Parke v. Raley* (1992) 506 U.S. 20, 37 ["evidence of a defendant's prior experience with the criminal justice system [is] relevant to the question whether he knowingly waived constitutional rights"].) Five years before trial, Jones had a conviction by plea for first degree robbery. This conviction is particularly relevant because before taking Jones's plea, the court was required to apprise Jones of the panoply of rights afforded by a jury trial. (See *People v. Lytle* (1992) 10 Cal.App.4th 1, 4 ["When a defendant pleads guilty or nolo contendere, whether or not the plea is pursuant to a plea bargain, he must be advised of and waive his rights of self-incrimination, confrontation and jury trial [citations], and must be advised of the direct consequences of the plea, including the maximum possible penalty."].)

On this record, we conclude the waiver was valid.

**B.     The Trial Court Appropriately Considered Jones's Prior Conviction to Select the Upper Term Sentence for Robbery**

**1.     Constitutional Limits on the Imposition of an Upper Term Sentence**

Under section 1170, subdivision (b)(2), the trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the

imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Ibid.*) However, subdivision (b)(3) provides an exception: "Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

In 2024, the United States Supreme Court decided *Erlinger v. United States* (2024) 602 U.S. 821 (*Erlinger*), holding that "[v]irtually 'any fact' that ' "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" ' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." (*Id.* at p. 834, first brackets added.) Thus, in sentencing "a judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.' " (*Id.* at p. 838.)

While this appeal was pending, the California Supreme Court in *People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*), followed *Erlinger* and interpreted section 1170, subdivisions (b)(2) and (b)(3) to comport with federal constitutional requirements as clarified by *Erlinger*. (*Wiley*, at pp. 1085–1086.) *Wiley* concluded "a defendant is entitled to a jury trial on all aggravating facts, *other than the bare fact of a prior conviction and its elements*, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm." (*Id.* at p. 1086, fn. omitted, italics added.)

11

We review questions about whether a defendant's constitutional rights were violated de novo. (*People v. Palmer* (2020) 49 Cal.App.5th 268, 280.)

### 2. Analysis

Here, we conclude the trial court appropriately imposed an upper term sentence based on Jones's prior conviction.

The trial court justified the upper term sentence as follows: "So the jury heard the evidence. The jury found [you] guilty of count[s] 2, 3, and [6]. The jury found that you had collaborated and conspired with Mr. Trone to commit a robbery. They found you guilty of count 2, the 211, count 3, the 211, count [6], the 182(a)(1) conspiracy. [¶] The court has found the prior conviction for a robbery from 2019 true. [¶] The court's going to impose the maximum on count 2 on the robbery, five years."

As the record reflects, the trial court only considered Jones's prior robbery for the "bare fact" of the conviction and thus acted within section 1170, subdivision (b)(3)'s statutory authorization and the constitutional limits set by *Erlinger* and *Wiley*.

Jones argues the trial court's consideration of the prior conviction was unconstitutional because it had to determine Jones was indeed the person who suffered the prior conviction. According to Jones, the court should have submitted to the jury the question of identity because it went beyond the bare fact of the conviction itself. We are not persuaded.

Section 1170, subdivision (b)(3) authorized the trial court's actions, and the Supreme Court has interpreted this section as coextensive with the limited exception that courts may decide the issue of a bare fact of a prior conviction. (*Wiley*, *supra,* 17 Cal.5th at p. 1086.) Further, determining the fact of a prior conviction

12

necessarily subsumes the question of the identity of the person previously convicted. (See *People v. Epps* (2001) 25 Cal.4th 19, 28–30; see *id.* at p. 28 ["only the bare fact of the prior conviction was at issue" where the defendant did not dispute *someone* was convicted and only disputed he was the person identified in the record of conviction].) It is apparent a court cannot determine a prior conviction exists for the defendant without determining the defendant was in fact the person identified in the record of conviction. Were we to accept Jones's argument, we would effectively eliminate an exception that has been endorsed by the United States and California Supreme Courts. We will not do so. (See *Rittiman v. Public Utilities Com.* (2022) 80 Cal.App.5th 1018, 1033 ["We . . . are bound to follow Supreme Court precedent."].)

In short, we conclude the trial court's consideration of Jones's prior conviction to select the upper term sentence did not violate his constitutional rights.

### C.    Jones's Abstract of Judgment Must be Corrected

Finally, the parties agree Jones's abstract of judgment must be corrected in two respects.

First, the abstract of judgment states the trial court imposed a five-year sentence for the section 12022, subdivision (a)(1) firearm enhancement. But the jury was not asked to, and did not, find Jones was armed with a firearm in the commission of the robbery.

Second, the abstract of judgment states the trial court imposed a five-year sentence for the count 2 robbery conviction. But at the oral pronouncement of sentence, the court doubled that term to 10 years because of the prior strike.

13

An appellate court has inherent power to correct clerical errors in its records to reflect the true facts, including the oral judgments of judicial officers. (*People v. Mitchell* (2001) 26 Cal.4th 181, 186–187.) We agree such correction of the record is appropriate. The abstract of judgment must be amended to reflect a firearm enhancement was never imposed on the count 2 robbery and the sentence on that count is 10 years.

## II.     Trone's Appeal (case No. B342267)

Trone makes two arguments on appeal. He argues substantial evidence does not support his conviction for felony murder and the trial court erroneously denied his motion for new trial based on insufficiency of the evidence. We reject both contentions.

### A.     Additional Relevant Facts

As a teenager, J.T. had experienced several run-ins with the law. By the time he was a 10th grader, he had been to two different juvenile halls. In February 2022, J.T. was in a suitable placement with a relative but ran away from home. As a result, the juvenile delinquency court issued J.T. a bench warrant for violating his probation. J.T. was also a minor in a case pending in juvenile dependency court. Around May 2022, the dependency court declared him a ward of the court and placed him in Trone's custody.

Between May and June 2022, Ebony Williams, a mental health clinician at the Los Angeles County Department of Mental Health, submitted several referrals for J.T. to Trone, including substance abuse counseling, negative peer interaction counseling, anger management, and assistance from an educational specialist. Trone rejected all these services, except for assistance with enrolling J.T. in school.

14

However, Williams had difficulty getting a school to accept J.T. as he suffered from health and emotional disturbances, which qualified him for an Individualized Education Plan (IEP). J.T.'s IEP required him to attend a nonpublic "specialized school for individuals who may have behavioral or mental health issues that may not be easily contained . . . in a regular public school." But three nonpublic schools in which Williams attempted to enroll J.T. rejected him. Williams eventually enrolled J.T. in public school, which accepted J.T. only because it was required to do so.

On September 3, 2022, a Los Angeles Police Department (LAPD) officer arrested J.T. in a park and found a semiautomatic gun inside J.T.'s backpack. The gun was loaded with 11 nine-millimeter bullets, and one bullet was loaded in the chamber. LAPD released J.T. to his stepmother to serve house arrest.

Trone testified at trial. He stated he did not give J.T. a gun the day of the robbery because he was "afraid of [J.T.] having any weapons around [him]." When asked why, Trone answered J.T. was dangerous, was bipolar, and had been diagnosed with a mood disorder. When further asked why Trone thought J.T. was dangerous, Trone testified J.T. "take[s] meds," "goes off and on," "can go from cool to upset in a matter of minutes," and had threatened his biological mother in the past. Moreover, Trone testified he received a report every time J.T. got in legal trouble. Thus, he knew J.T. had previously been charged with grand theft auto and possession of a firearm and knew about the September 3, 2022 incident.

**B. Substantial Evidence Supports the Felony Murder Conviction**

**1. The Major Participant with Reckless Disregard for Human Life Standard**

Section 189, subdivision (e) provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder" if, among other things, "[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." (*Id.*, subd. (e)(3).)

In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), the California Supreme Court provided guidance on the meaning of the two statutory phrases "major participant" and "reckless indifference to human life." (*People v. Emanuel* (2025) 17 Cal.5th 867, 883.)

In *Banks*, the court identified the following factors a court should consider in determining whether an individual was a major participant: "[(1)] What role did the defendant have in planning the criminal enterprise that led to one or more deaths? [(2)] What role did the defendant have in supplying or using lethal weapons? [(3)] What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? [(4)] Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? [and] [(5)] What did the defendant do after lethal force was used?" (*Banks, supra,* 61 Cal.4th at p. 803, fn. omitted.) The court

16

continued, "No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Id.* at p. 803.)

In *Clark*, the court noted there was both a subjective and objective element to reckless indifference, quoting Model Penal Code section 2.02, subdivision (2)(c): " 'A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' " (*Clark, supra,* 63 Cal.4th at p. 617.)

The *Clark* court "set out a nonexhaustive list of considerations relevant to [the reckless indifference standard], including [(1)] use of or awareness of the presence of a weapon or weapons, [(2)] physical presence at the scene and opportunity to restrain confederates or aid victims, [(3)] the duration of the crime, [(4)] knowledge of any threat the confederates might represent, and [(5)] efforts taken to minimize risks." (*People v. Strong* (2022) 13 Cal.5th 698, 706, citing *Clark, supra*, 63 Cal.4th at pp. 618–623.) The "major participant" and "reckless indifference" elements significantly overlap. (*Strong*, at p. 706; *Clark*, at p. 615.)

17

When assessing the sufficiency of the evidence, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. . . . [W]e review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. . . . A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357, citations omitted; see also *People v. Gomez* (2018) 6 Cal.5th 243, 278 [court does not "resolve credibility issues or evidentiary conflicts"].)

### 2.    Analysis

Applying the law from these decisions to the facts in this case, we conclude there is substantial evidence to support the jury's conclusion that Trone was a major participant in the robbery that led to Allen's murder and acted with reckless indifference to human life.

With respect to the major participant prong, there was evidence for the jury to find against Trone on every factor. The jury could have reasonably concluded Trone had a vital role in planning the robbery during his meeting outside Roscoe's with Jones, which was shortly after Jones witnessed Allen and Stephanie wearing half a million dollars' worth of jewelry. The jury could have reasonably concluded from the texts Trone sent J.T. after the robbery that Trone controlled and directed J.T.'s actions. The jury could have reasonably concluded the object Jones gave to Trone was a gun that Trone later supplied to J.T. As further explained in the reckless indifference analysis below,

18

the jury could have reasonably concluded Trone was aware of the dangers posed by arming his mentally unstable son and directing him to commit a robbery. Although Trone was not present at the scene when the killing occurred, the jury could have reasonably concluded Trone's actions played a vital role in Allen's death as he supplied J.T. with the gun and dropped off J.T. near Roscoe's so J.T. could rob Allen. The jury could have also reasonably concluded Trone played a vital role in covering up the crime: evidence showed he returned to Roscoe's to pick up J.T. as the getaway driver and later burned the Buick.

As for the reckless indifference prong, two factors indisputably weigh in Trone's favor. He was not inside Roscoe's and the robbery murder transpired within seconds; thus there is no evidence Trone could have intervened as J.T. held Allen at gunpoint or could have aided Allen after J.T. shot him.

However, there was evidence for the jury to find against Trone on every remaining factor. First, the jury could have reasonably concluded Trone knew J.T. was going to use a gun to commit the robbery because Trone supplied J.T. with the gun.

Second, the jury could have reasonably concluded Trone knew J.T. had a propensity for violence and was likely to use the gun in the commission of the robbery. Trone testified he knew J.T. was dangerous because J.T. needed medication for his mental illness, was bipolar, "can go from cool to upset in a matter of minutes," and had threatened his biological mother in the past. Trone also admitted J.T. was so dangerous that he would never give J.T. a gun. Trone was also aware of J.T.'s myriad of legal troubles, including the arrest for gun possession on September 3, 2022. Trone also knew his son had been referred services for anger management, peer intervention, and substance abuse.

Finally, there is no evidence Trone made efforts in advance to minimize risks. "[T]he absence of such efforts does not necessarily evince a subjective disregard for risk where the objective circumstances of the planned crime suggest the risk of violence posed is no more than that inherent in any violent felony." (*Emanuel, supra,* 17 Cal.5th at p. 888.) However, the evidence shows Trone *significantly increased* the risks by arming his mentally unstable son—who he admitted was dangerous and should never be given a gun—and sending J.T. into Roscoe's alone to rob Allen. Under these circumstances, the jury could have reasonably concluded from Trone's failure to minimize risks that he acted with reckless indifference to human life.

Trone's briefing addresses only the reckless indifference prong and the evidence favorable to his position. For example, citing his own trial testimony, he asserts the item Jones gave him was marijuana rather than a gun, he did not give J.T. the gun, he did not know J.T. would use a gun in the robbery, and he had no ability to minimize the risk of violence. But as detailed above, there is ample evidence—much of which directly contradicts Trone's testimony—from which the jury could have reasonably concluded Trone acted with reckless indifference. Trone's failure to acknowledge and address evidence favorable to the jury verdict arguably constitutes forfeiture of his substantial evidence challenge. (See *E.I. v. El Segundo Unified School Dist.* (2025) 111 Cal.App.5th 1267, 1285 [" 'A party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable.' "].) Even considering the argument on the merits, we reject it, based on the ample evidence cited above.

In short, substantial evidence supports the felony murder conviction.

## C. The Trial Court Did Not Abuse Its Discretion in Denying Trone's Motion for New Trial

### 1. Motions for New Trial

In considering a motion for new trial based on the ground that the jury verdict is contrary to the law or evidence (§ 1181, subd. (6)), the trial court, acting as a " '13th juror,' " determines whether the charges have been proven beyond a reasonable doubt. (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 133.) In making this determination "a trial court must review the evidence independently, considering the proper weight to be afforded to the evidence and then deciding whether there is sufficient credible evidence to support the verdict." (*People v. Lewis* (2001) 26 Cal.4th 334, 364.)

When the issue involves sufficiency of the evidence, the denial of a motion for new trial is reviewed for an abuse of discretion. (*People v. Fuiava* (2012) 53 Cal.4th 622, 730.) "The court has broad discretion in ruling on a new trial motion, and the court's ruling will not be overturned absent a clear and unmistakable abuse of that discretion. [Citation.] The court abuses its discretion, however, where it misconceives its duty, applies an incorrect legal standard, or fails to independently consider the weight of the evidence." (*People v. Carter* (2014) 227 Cal.App.4th 322, 328.)

### 2. Analysis

The trial court did not abuse its discretion in rejecting Trone's argument there was insufficient evidence to support his felony murder conviction. As explained in part II.B., *ante*, substantial evidence supports the jury verdict. Trone repeats the

21

arguments he made challenging the sufficiency of the evidence, but these arguments do not compel a different result. Trone also makes a passing assertion that the court's denial of his new trial motion deprived him of due process. This conclusory assertion, without more, is insufficient to demonstrate error. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 [bare assertions of error are insufficient; "an appellant must supply the reviewing court with some cogent argument supported by legal analysis . . . ."].)

## DISPOSITION

As to defendant Jones, the superior court is directed to amend Jones's abstract of judgment to reflect a firearm enhancement was never imposed on count 2 and the sentence on that count is 10 years. The superior court is further directed to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

As to defendant Trone, the judgment is affirmed.


RICHARDSON, J.


WE CONCUR:


CHAVEZ, Acting P. J.      HOFFSTADT, J.*

---

*      Presiding Justice of the Court of Appeal, Second Appellate District, Division Five assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.